UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
------------------------------ x
                               :
 UNITED STATES OF America,     :
               Plaintiff,      :      Criminal No.
                               :       3:25mj915 (SDV)
          vs.                  :
                               :      September 25 2025
 RYAN JASELSKIS,               :
               Defendant .     :
                               :
------------------------------ x
```

United States Courthouse
915 Lafayette Blvd.
Bridgeport, CT 06604

BOND HEARING

(Transcription from Electronic Recording)

Held Before:

THE HON. S. DAVE VATTI
United States Magistrate Judge

Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Lane
Simsbury, CT  06070
860.651.0258
www.falzaranocourtreporters.com

APPEARANCES:

For the Plaintiff:

DEPARTMENT OF JUSTICE
UNITED STATES ATTORNEY'S OFFICE
1000 Lafayette Boulevard, St. 10th flr.
Bridgeport, CT 06640
203-969-3000
kenneth.gresham@USdoj.gov
        BY:  KENNETH L. GRESHAM, ESQ.,
             Assistant United States Attorney


For the Defendant:

OFFICE OF FEDERAL PUBLIC DEFENDER
10 Columbus Blvd.  Ste. Fl 6
Hartford, CT  06106
860-256-0311
Mmichael petrik@fd.org
        BY:  MICHAEL PETRIK, JR., ESQ.


Also present:

Kaitlyn Wentz, United States Probation Officer

Mrs. Christine Jaselskis

(Proceedings commenced: 2:30 p.m.)

THE COURT:  Good afternoon, everyone.  You can all be seated.  We're here in the matter of United States versus Ryan Jaselskis, docket number 119cr64 (TJK), which is the docket number in the U.S. District Court for the District of Columbia.  The docket number here in the District of Connecticut is 3:25mj915 (SDV).

If I could have appearances of counsel, starting with the Government, please.

MR. GRESHAM:  On behalf of the Government, AUSA Kenneth Gresham.  Good afternoon, your Honor.

THE COURT:  Good afternoon, Attorney Gresham.

MR. PETRIK:  Good afternoon, your Honor.  Michael Petrik, Officer of the Federal Defender for Mr. Jaselskis.  He's present before the Court.  He's in custody.

THE COURT:  All right.  Good afternoon, Attorney Petrik and good afternoon, Mr. Jaselskis.

MR. JASELSKIS:  Good afternoon, your Honor.

THE COURT:  So Mr. Jaselskis -- am, am I saying that correctly?

MR. JASELSKIS:  Jaselskis.  It, it's --

THE COURT:  Jaselskis.

MR. JASELSKIS:  -- yeah, it's all right.  That's

fine.  Thank you.

THE COURT:  Okay.  Jaselskis.  The reason that we're here is a violation report was filed in the United States District Court for the District of Columbia alleging that you violated multiple conditions of your supervised release.  Our purpose this afternoon is to advise you of your rights, ensure that you have counsel, consider the question of detention or release, determine whether a preliminary hearing is necessary on the alleged violations, and also to the extent that I have a date, which I may not, we will consider whether there is an available hearing date that the District of Columbia wants to have the final revocation hearing on.

I'm going to start by advising you of your rights.  You have the right to remain silent.  That means you are not required to make any statements to anyone about this case.  If you've already made a statement, you do not need to continue.  If you start making a statement, you can stop at any time.  And if you choose to make a statement, you have the right to have your attorney with you.  Do you understand those rights?

MR. JASELSKIS:  Yes, your Honor.

THE COURT:  If you do choose to make a statement, anything you say can and very likely will be used to prosecute you on these alleged violations or on

new criminal charges.  Do you understand that?

MR. JASELSKIS:  Yes, your Honor.

THE COURT:  You also have a right to be represented by counsel at every stage of these proceedings.  And do you want me to appoint Attorney Petrik to represent you in connection with any proceedings here in the District of Connecticut?

MR. JASELSKIS:  Yes, your Honor.  Thank you.

THE COURT:  All right.  I do have a financial affidavit.  I find from the content of the affidavit that Mr. Jaselskis qualifies for the appointment of counsel.

And Attorney Petrik, you and the federal defender's office are appointed to represent him going forward in any Connecticut proceedings.

MR. PETRIk:  Thank you, your Honor.

THE COURT:  The financial affidavit can be filed under seal.

I do want to advise you, Mr. Jaselskis, that Attorney Petrik is a Connecticut lawyer.  To my knowledge, he is not admitted to the Bar in the District of Columbia; is that correct?

MR. PETRIK:  That is correct, your Honor.

THE COURT:  All right.  So another attorney's going to have to be appointed for you in the District of Columbia.  So when you do go for any proceedings in the

District of Columbia, it's important that you ask for the appointment of counsel in that District.  Do you understand that?

MR. JASELSKIS:  Yes, your Honor.

THE COURT:  All right.  I also need to advise you that if you are not a citizen of the United States, you have the right to request that the Government notify the consulate of your country of citizenship regarding your arrest.  That's something you ought to discuss with Attorney Petrik.  Do you understand?

MR. JASELSKIS:  Yes, your Honor.

THE COURT:  And, Attorney Petrik, is there a consulate that Mr. Jaselskis would like to have notified of his arrest at this time?

MR. PETRIK:  No, your Honor.  Thank you.

THE COURT:  Okay.  I now have to just ask you a few questions.  Actually, you know what I will -- I'm going to do.  Let's address the question of detention or release first.  If I end up releasing Mr. Jaselskis, I believe that a preliminary hearing is not required.

Is that your understanding, Attorney Gresham, under Rule 32?

MR. GRESHAM:  Yes, your Honor.

THE COURT:  Okay.  U.S. Probation Officer Kaitlyn Wentz is here in the courtroom with us seated in

the jury box.  So what is the Government's position regarding detention?

MR. GRESHAM:  Your Honor, the Government is just going to defer to probation's recommendation, whatever it is.

THE COURT:  Okay.  My understanding is that probation's recommendation is that Mr. Jaselskis be released to -- with his mother serving as third-party custodian.

Is that accurate?

MS. WENTZ:  Yes, your Honor.

THE COURT:  Okay.  Attorney Petrik, happy to hear from you on the bond issue.

MR. PETRIK:  We'd ask that you follow that recommendation, your Honor.  Ms. Jaselskis is here to take custody of her son.  She's prepared to transport him back to the District of Columbia and he's prepared to report to the court or to the probation office as ordered by this Court.

THE COURT:  All right.  If she can step forward?

And if you can come to the podium, ma'am.  And if you can state your name for the record?

MRS. JASELSKIS:  Christine Jaselskis.

THE COURT:  Okay.  Thank you for being here today.

MRS. JASELSKIS:  Thank you, your Honor.

THE COURT:  What do you do for a living?

MRS. JASELSKIS:  Real estate.

THE COURT:  And how long have you been in that occupation?

MRS. JASELSKIS:  27 years.

THE COURT:  And where in Florida do you reside?

MRS. JASELSKIS:  Punta Gorda.

THE COURT:  All right.  And do you own your own home in Punta Gorda?

MRS. JASELSKIS:  Yes, sir.

THE COURT:  And who lives there with you?

MRS. JASELSKIS:  My husband Paul Jaselskis.

THE COURT:  And do you have sufficient space for your son to live there as well?

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  Okay.  And my understanding from the probation office is that for the first couple of years of your son's supervision by the U.S. Probation Office he was actually residing with you in Florida?

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  All right.  And did you have regular communication with his supervising probation officer during that period of time or no?

MRS. JASELSKIS:  Initially, but then he said

that Ryan was the client, so he wanted to keep it just with him and Ryan.

THE COURT:  All right.  And during the period that your son was living with you in Florida during that initial two years of supervision, were there any problems from your perspective?

MRS. JASELSKIS:  No, your Honor.  At first there was some while Ryan was adjusting, but then once he got through the first few months, then everything was good the next year and a half.

THE COURT:  And were you ever notified by the probation office that there were any compliance issues during the first two years?

MRS. JASELSKIS:  He did have a couple, your Honor, because he had, he has schizophrenia effective disorder, so he had a few mental episodes.

THE COURT:  And when -- what -- was that earlier in the supervision period or roughly when?

MRS. JASELSKIS:  About six months and about a year.

THE COURT:  And how were those dealt with?

MRS. JASELSKIS:  He had to go get treatment, your Honor.

THE COURT:  And it seems as if the compliance issues came to a head when he moved to New Jersey.

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  And what caused the move to New Jersey?  I need you to be, I need you to be fully, fully candid with me so I can make the best decision I can here.

MRS. JASELSKIS:  My, my husband and I -- your words, run a tight ship.  We have boundaries with curfew and, and no drugs, no drinking.  We have to work full time.  You know, you have to eat with us as a family.  You have to have chores.  And my parents are not that way.  My parents let Ryan do what he wants and I think because of his mental condition, it's very important that he has those boundaries.  So that's why I believe he did well with us and then that caused the problem when he left.

THE COURT:  What, why, why did he leave at all?  What was the purpose of going to New Jersey?

MRS. JASELSKIS:  I believe for the freedom, but I think he learned the lesson that that's not the thing to do.  That he actually sees the value to having those boundaries.  That they're there to protect him, not to control him.

THE COURT:  Okay.  Do you have any concerns or does your husband have any concerns at this point about your own safety --

MRS. JASELSKIS:  No, your Honor.

THE COURT:  -- if I were to release your son

back to your house in Florida?

MRS. JASELSKIS:  No, your Honor.  I talk to Ryan every day, sometimes multiple times a day and I believe he's very understanding that he needs to comply with our boundaries.

THE COURT:  And is he currently on any medications to your knowledge?

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  And what are those medications?

MRS. JASELSKIS:  I know for sure Olanzapine.  It's two pyscho --

THE COURT:  Tropic drugs?

MRS. JASELSKIS:  yes.  And then Benadryl to help him sleep.

THE COURT:  And what is the plan right now for continuing mental health treatment in Florida?

MRS. JASELSKIS:  Immediately pick up with where he was before.  He can go back to the same treatments that he was doing before.

THE COURT:  And is there a particular treatment provider that he was seeing?

MRS. JASELSKIS:  Yes.  Sorry, I'm drawing a blank.

THE COURT:  Was the name provided to the probation officer?

MRS. JASELSKIS:  No.  But -- and I don't -- oh shoot.  I know Ryan would know the name.  I'm totally blank.

THE COURT:  Attorney Petrik, do you want to consult with your client?

MR. PETRIK:  I, I think he told probation.

MS. WENTZ:  Yes, your Honor.  I have Kim Sanger and Omar Rieche.

THE COURT:  Okay.  And were those the providers that your son was seeing on a regular basis?

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  Okay.  And is there a plan to continue that treatment?

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  And the probation office indicated that there might have already be a scheduled appointment; is that correct?

MS. WENTZ:  That's what I was informed by Mr. Jaselskis.

THE COURT:  Okay.  All right.  I just wanted to explain to you what it means to be a third-party custodian.  You're effectively acting as the eyes and ears of the Court.  Obviously, we can't be there to supervise him.  I am planning on putting Mr. Jaselskis on electronic monitoring and home detention.  There are exceptions to

that, which means he can go out of the house to do employment and for employment-related purposes, such as job applications, interviews, things like that. Medical appointments obviously if he's going to be having continuing mental health treatment. But I think at least for the initial period of 60 days until he has his first hearing in the District of Columbia, it probably makes sense for me to do that.

MS. WENTZ: Yes, your Honor.

THE COURT: All right. And it means that your supervising him so that you're effectively our eye and ears. If you see things that are concerning to you and your husband, you need to let the probation office know so that we can take whatever action might be necessary. Do you understand that?

MRS. JASELSKIS: Yes, your Honor.

THE COURT: Is that something you're willing to do? If you see anything that concerns you?

MRS. JASELSKIS: Absolutely, yes, your Honor.

THE COURT: Okay. All right. Thank you. I'm also going to have you actually sign a bond. What does your husband do for a living?

MRS. JASELSKIS: He's a nurse.

THE COURT: Okay. And how long has he been with his current employer?

MRS. JASELSKIS:  Six year, your Honor.

THE COURT:  Okay.  So I'm going to have you cosign a bond, which means -- you both own the home that you live in?

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  Is it in both your names?

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  Okay.  Is your husband willing to sign a bond as well?

MRS. JASELSKIS:  Yes, your Honor.

THE COURT:  Okay.  So I'm going to have you both be cosigners on a bond, which means that you're taking on a financial risk if -- you don't have to post any money today, but what it means is if Ryan does not appear in court as required or fails to surrender to serve any sentence the court might impose upon him, the Government can go after whoever signs the bond to collect on the amount of the bond.

So I am going to set a hundred thousand dollar bond here.  Obviously, since you own a home, you're gainfully employed and so is your husband, the obvious targets to collect on a hundred thousand dollar bond if Ryan were to fail to appear, would be you and your husband.

MRS. JASELSKIS:  Okay.

THE COURT: And the Government would garnish paychecks, they would try to seize any equity in the home in order to collect that hundred thousand dollar bond. Do you understand that?

MRS. JASELSKIS: Yes, your Honor. We're not counting on that. Thank you.

THE COURT: Okay. And so you understand the financial risk you're taking on by being cosigners on a bond?

MRS. JASELSKIS: Yes, your Honor.

THE COURT: Okay. And are you willing to take on that financial risk?

MRS. JASELSKIS: Yes, your Honor.

THE COURT: And Mr. Jaselskis, do you understand the financial risk that your parents are taking if you were to fail to appear?

MR. JASELSKIS: Yes, your Honor.

THE COURT: Okay. All right. Thank you, ma'am.

MRS. JASELSKIS: Thank you, your Honor.

THE COURT: So I had Officer Wentz speak to the probation office in the District of Columbia. They would prefer detention. I think that's what they plan on seeking. Officer Wentz also spoke to the supervising officer in Florida who reported that there were no significant compliance issues during the period in

Florida, but let me have Officer Wentz put on the record what she was told by the person in Florida that you spoke to.

Was it a supervising officer or somebody else?

MS. WENTZ:  It was someone else, your Honor. The supervising officer was unavailable today.

THE COURT:  Okay.

MS. WENTZ:  So I spoke -- excuse me -- I spoke with a supervisor in the Middle District of Florida who confirmed that there were no violations filed on their court record.  But I will be reaching out to them via email after the hearing today for written confirmation of, of summary of his conduct while on supervision.

THE COURT:  All right.  I am a little reluctant to release Mr. Jaselskis today without speaking to his supervising officer in Florida, especially given the nature of some of the issues that have been raised in the petition.  Is Mrs. Jaselskis able to stay the night here in Connecticut if we have another hearing tomorrow?

MRS. JASELSKIS:  Yes, your Honor.  Yes, your Honor.

THE COURT:  Okay.  All right.  I am going to continue the hearing because it's my understanding is Florida preferred to send us a written report and I think it's probably incumbent upon me to give them that

opportunity in light of the allegations here.  I'd like to review that report.  I also want to make sure that Officer Wentz has the opportunity to speak with the actual supervising officer in Florida.

What time are you all available tomorrow?  What time am I available tomorrow?  Anything after -- any, any time after 12:30.

MR. GRESHAM:  I'm available anytime in the afternoon, your Honor.

THE COURT:  Attorney Petrik, one o'clock; does that work for you?

MR. PETRIK:  One o'clock it is.  Thank you.

THE COURT:  Okay.  I'll see you all here tomorrow for a continuation of the hearing.  And we'll have Mr. Jaselskis held temporarily pending the completion of the bond hearing.

All right.  Thank you all.  See you tomorrow.

MR. PETRIK:  Thank you.

MRS. JASELSKIS:  Okay.

(Hearing adjourned at 2:45 p.m.)

(End of recording.)

CERTIFICATE


I hereby certify that foregoing pages 17 are a complete and accurate transcription to the best of my ability of the electronic recording of the BOND HEARING in the matter of the UNITED STATES OF AMERICA versus RYAN JASELSKIS, held in the United States District Court of Connecticut before United States Magistrate Judge, the Honorable S. Dave Vatti on September 25, 2025.


*Joanne Auger*

Joanne Auger, Transcriber    Date: October 1, 2025

Falzarano Court Reporters, LLC